[Civ. No. 15613. First Dist., Div. One. Dec. 31, 1953.]

RAYMOND P. CORCORAN et al., Appellants, v. CITY OF SAN MATEO et al., Defendants; CONWAY AND CULLIGAN DEVELOPMENT COMPANY (a Corporation) et al., Respondents.

356

William C. Burns and James A. Himmel for Appellants.

Hoffman & Nagle for Respondents.

WOOD (Fred B.), J.—Plaintiffs have appealed from a judgment in favor of defendants Conway and Culligan Development Company, a corporation, and Andrew Conway and Thomas J. Culligan, individually and as copartners doing business under the name of Conway and Culligan.[1] The judgment was rendered upon the sustaining of these defendants' general demurrer to plaintiffs' second amended complaint, without leave to amend.

*Question:* Did the defendants owe to a child trespassing upon their land a duty to erect a fence or other barrier or protective device at or near the boundary, to protect the child from going onto adjacent land, owned and controlled by a third party, and there falling into a ditch, the water surface of which was so covered with grass and debris as to give it the appearance of solid ground?

In the first count of the complaint plaintiffs allege that (1)[2] defendants owned a large tract of land immediately adjacent to and contiguous with the side or bank of an open drainage ditch owned and maintained by the city of San

---

[1] Mentioned hereinafter as "defendants." The city of San Mateo and Carl Thorsby, city engineer, are also named as defendants but are not involved upon this appeal.

[2] For convenience of reference we have assigned numbers to these clauses. They do not refer, by number, to the paragraphs of the complaint.

Mateo; (2) defendants undertook the development and promotion of this tract, subdividing it and building homes which they advertised and offered for sale to the public; (3) plaintiffs purchased and became residents of one of these homes, near an unfenced lot belonging to and under exclusive control of the defendants; (4) on land immediately adjacent to and conterminous with the unfenced lot, the city of San Mateo owned and maintained said open drainage ditch and stream, 5 feet deep and flowing water 3 feet in depth; (5) the ditch and stream, immediately at the rear of the unfenced lot, was covered with black dirt and sand and grass, giving the appearance of solid ground; (6) on December 29, 1950, and for a long time prior thereto defendants knew or should have known that small children resided in homes in this tract, on the street which fronted the unfenced lot and on the same side of the street as the lot, and that it was customary and common practice for said small children to play on the sidewalk fronting these homes and to gather in and play on the unfenced lot; (7) the city of San Mateo, its engineers, agents, servants, and employees carelessly and negligently maintained the ditch and stream and ground appurtenant thereto in a dangerous and defective condition in that debris, mud and sand were allowed to collect therein and make the same [un]safe to the public; [8] defendants Conway and Culligan knew or should have known that the small children who played upon the unfenced lot would not discover the dangerous condition of the ditch and stream; (9) defendants[3] neglected and failed after notice of such condition to erect a fence, barrier or other protective device to protect the public and small children from falling into the stream or ditch; (10) plaintiffs' minor child stepped into the ditch and stream, resulting in her death, caused by said dangerous condition and as a direct and proximate result of the concurrent negligence of the defendants; and (11) plaintiffs have thereby sustained injuries to their damage in the sum of $250 for funeral and burial expenses, and $75,000 for deprivation of the services and comfort of the child; and $25,000 by plaintiff Alberta Corcoran for nervous breakdown and medical and hospital treatment.

In the second count of the complaint plaintiffs incorporated by reference the allegations summarized in clauses (1) to (5), inclusive, (10), and (11), above, and additionally al-

---

[3]Apparently includes the respondents herein.

leged that (a) defendants city of San Mateo, its engineers, servants, and employees owned and maintained said drainage ditch which, immediately adjacent to the southeast corner of the tract and of the unfenced lot, flowed through a culvert under the Bayshore Highway, a public highway which passed over and caused the ditch and stream to accumulate debris, grass, soil and mud on the top of the water flowing in the stream and gave the ditch and stream the appearance of solid ground; (b) "said defendants" knew or should have known that said condition was perilous and dangerous to the public, particularly to small children living in the vicinity, but neglected to erect a safety device, barrier, or fence upon the bank on the northerly side of the drainage ditch or stream to protect small children from falling or sliding into the ditch or stream; and (c) as a direct and proximate "cause" [result?] of the negligence of "the defendants above named," plaintiffs' minor child because of her immaturity of mind fell or slipped into the unprotected and unguarded stream owned and maintained by the "aforesaid defendants" and was drowned.

It is not clear whether the expressions "said defendants," the "defendants above named," and the "aforesaid defendants" (in clauses (b) and (c), above) were used to designate all of the defendants or only the city of San Mateo and possibly its agents and employees. However, for the purpose of considering respondents' general demurrer we will treat the second count as if the quoted expressions were intended to designate the respondents as well as other defendants.

It is apparent from this summary that plaintiffs seek to hold the respondents legally liable for an alleged dangerous condition existing on land not their own, a condition not created or maintained by the respondents and one over which they have no control. Yet, because the drainage ditch, as alleged by plaintiffs, is "immediately adjacent to the rear" of the unfenced lot, "on land immediately adjacent to and conterminous with" the southern boundary of the tract which respondents subdivided and developed for sale to the public, and because small children living in the vicinity play on this lot and respondents allegedly know or should know that they do so, plaintiffs contend that the law imposes upon respondents a duty to erect a fence, barrier or other protective device on their lot along or near its southern boundary.

The owner or possessor of land owed no such duty at common law. "The common law of England, so far as it

is not repugnant to or inconsistent with the Constitution of the United States, or the Constitution or laws of this State, is the rule of decision in all the courts of this State.'' (§ 22.2 added to Civ. Code by Stats. 1951, ch. 655, p. 1833; a continuation of former Pol. Code, § 4468, which was based on Stats. 1850, ch. 95, p. 219.) No judicial decision has been brought to our attention, and we have found none, which holds that the common law rule applicable to the facts of the instant case is ''repugnant to or inconsistent with'' our Constitution and laws. As early as 1869 it was held that at common law no duty is imposed upon a lot owner to repair a defect in a public street fronting his lot. ▮ Mere ownership, control or possession of the lot does not make one legally responsible in damages to a person who is injured by reason of defects in the street. Such a duty and responsibility, if any exist, must be found in the statutes of the state. (*Eustace* v. *Jahns,* 38 Cal. 3, 14-15 and 17.) That principle finds expression in a series of decisions over the years. As recently as 1952 the Supreme Court said: ''It is the general rule that in the absence of a statute a landowner is under no duty to maintain in a safe condition a public street abutting upon his property.''[4] (*Sexton* v. *Brooks,* 39 Cal.2d 153, 157 [245 P. 496].)

▮ It is true that some exceptions to the original common-law concept of nonliability toward persons trespassing upon one's land have been developed over the years. But those exceptions pertain solely to conditions existing upon one's own land, not to conditions, natural or artificial, which obtain upon the land of another and over which one has no control. (See Rest. Law of Torts, §§ 333-339, liabilities of possessors of land to trespassers thereon; and discussion in *Marino* v. *Valenti,* 118 Cal.App.2d 830, 841-848 [259 P.2d 84].)

▮ Plaintiffs in their briefs speak of an ''implied invitation'' extended by the respondent to children who play on the unfenced lot. They do not point to any facts alleged in the complaint which furnish a legal basis for such an implication, nor do we find any such. The mere fact, if it be a fact, that respondents subdivided and developed a tract of land adjacent to a city drainage ditch, and sold the im-

---

[4]That, of course, is consistent with the principle that an abutting owner may be liable for portions of a public sidewalk which he has constructed or altered for the benefit of his property and which serve a use independent of and apart from the ordinary and accustomed use for which sidewalks are designed. (See p. 157 of 39 Cal.2d.)

proved lots to members of the public, including the plaintiffs, does not of itself import an invitation to children to play on unsold lots. We find nothing in the complaint which characterizes the children as licensees. They are in legal effect trespassers, as we read the complaint. It is not at all like the case of a landowner who affirmatively maintains a public playground for the entertainment of children of tender years. He conceivably might be under a duty to fence his boundary if it physically adjoined a ditch of the kind described in the complaint. But that is not this case.

No statute imposing upon respondents a duty to erect a fence, barrier, or other protective device, under the circumstances described in the complaint, has come to our attention. The judgment must be affirmed.

In view of this conclusion it is unnecessary to consider the respondents' other contentions: i. e., that there are grounds additional to those we have discussed for holding that the complaint fails to state a cause of action against the respondents.

The judgment appealed from is affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied January 29, 1954, and appellants' petition for a hearing by the Supreme Court was denied February 24, 1954.