[No. 16068-8-III.    Division Three.    November 13, 1997.]

SANDRA J. MCMANN, *individually*, ET AL., *and as administratrix*, *Appellants*, v. BENTON COUNTY, ANGELES PARK COMMUNITIES, LTD., *Respondent*.

*Eugene G. Schuster* of *Critchlow, Williams, Schuster, Malone & Skalbania*; and *Michael T. Kozlowski*, for appellants.

*Michael L. O'Donnell* of *Raekes, Rettig, Osborne, Forgette & O'Donnell*, for respondent.

Brown, J. — The McManns and Sandra McMann as

administrator of the estate of Devin McMann appeal an order granting Angeles Park Communities Ltd. (Angeles Park) summary judgment finding that Angeles Park had no imposed duty as an owner or occupier of land to provide reasonable care to protect tenants from the dangers associated with an irrigation canal on land adjacent to its property. The court also found that Angeles Park had not assumed a duty to warn its tenants about the canal. The McManns rely mainly on *Degel v. Majestic Mobile Manor, Inc.*, 129 Wn.2d 43, 914 P.2d 728 (1996) to support their position that Angeles Park breached an imposed duty to make its property safe from the dangers presented by the abutting canal. We decide under these facts that *Degel* is distinguishable and the majority rule applies to Angeles Park's liability for conditions on its land. Therefore, there was neither an imposed nor assumed duty. We affirm.

## FACTS

In October, 1992, Sandra McMann, lived in the Hills West Mobile Home Park (Hills West) with her sons, five-year-old Devin and his elder brother Andrew. Angeles Park owns Hills West. On October 17, 1992, Harold McMann, the former husband of Sandra McMann, was taking care of the children at Ms. McMann's home while she worked away from home. During the late morning or early afternoon of that day, Devin drowned in the adjacent irrigation canal located 100 to 150 yards from Hills West, down a gradual slope, which levels near the canal. Angeles Park owns the largely undeveloped slope. Columbia Irrigation District operates the canal.[1]

In the fall of 1992, Angeles Park's managers followed their custom of posting a notice to tell the tenants when the irrigation well would be turned off. Angeles Park did not draw water from the canal for any purpose. The McManns claim seeing a handwritten notice but could

---

[1]The District was also a defendant at one time, but was granted summary judgment in its favor. The District is not a party to this appeal.

provide no details of who prepared or posted it, yet recalled it pertained to when the irrigation canal would be emptied. They recalled the time for the canal to be emptied was before the death of their son, Devin.

On August 15, 1996, the trial court granted Angeles Park's motion for summary judgment determining there was neither a duty based on owner/occupier law to fence nor any assumed duty based on the claim of notice on the part of Angeles Park. This appeal followed.

## ANALYSIS

1. Standard of Review. The standard of review of the trial court's grant of summary judgment under CR 56(e) is well stated in *Ruffer v. St. Frances Cabrini Hospital*, 56 Wn. App. 625, 627-28, 784 P.2d 1288, *review denied*, 114 Wn.2d 1023 (1990). "In reviewing an order of summary judgment, the appellate court engages in the same inquiry as the trial court." *Id.* at 627. "Summary judgment is proper only when the pleadings, depositions, and admissions in the record, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* at 627-28; CR 56(c). "All facts and reasonable inferences are considered most favorably to the nonmoving party." *Ruffer* at 628. "The moving party must meet this burden by setting out its version of the facts and alleging there is no genuine issue as to the facts offered." *Id.* " 'While generally a question of fact is properly left to the trier of fact, when reasonable minds could reach but one conclusion, questions of fact may be determined as a matter of law.' " *Id.* (quoting *Trane Co. v. Brown-Johnston, Inc.*, 48 Wn. App. 511, 739 P.2d 737 (1987)). "Once there has been an initial showing of the absence of any genuine issue of material fact, the party opposing summary judgment must respond with more than conclusory allegations, speculative statements, or argumentative assertions of the existence of unresolved factual issues." *Id.* (Citation omitted).

2. Owner/Occupier Liability for Hazardous Conditions on Adjacent Property. The McManns contend that Angeles Park breached its duty to protect its tenants from dangers caused by the irrigation canal adjacent to its property. Specifically, it argues because Angeles Park did not construct a fence between its land and the abutting canal, it breached its duty owed to Devin McMann as an invitee of Hills West.

To maintain an action for negligence, a plaintiff must prove: "(1) the existence of a duty owed to the complaining party; (2) a breach thereof; (3) a resulting injury; and (4) a proximate cause between the claimed breach and resulting injury." *Pedroza v. Bryant*, 101 Wn.2d 226, 228, 677 P.2d 166 (1984). At issue here is whether Angeles Park owed a duty to Devin McMann.

Whether a party owes a duty of care to the complaining party is a question of law. *Id.* at 228. The existence of a duty may be set forth under common law or statutory provisions. *Degel*, 129 Wn.2d at 49 (citing *Bernethy v. Walt Failor's, Inc.*, 97 Wn.2d 929, 932, 653 P.2d 280 (1982)). Under the common law in Washington, a landowner's duty of care to persons on their land is governed by the entrant's status as an invitee, licensee or trespasser. *Id.* (citing *Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 128, 875 P.2d 621 (1994)).

Devin McMann was a tenant of Hills West, and therefore was an invitee of Angeles Park. A landowner owes invitees a duty to use ordinary care to keep the premises in a reasonably safe condition. *Id.* (citing *Ertl v. Parks & Recreation Comm'n*, 76 Wn. App. 110, 113, 882 P.2d 1185 (1994), *review denied*, 126 Wn.2d 1009 (1995)). RESTATEMENT (SECOND) OF TORTS § 343 (1965) states the rule as follows:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, [the possessor]

(a) knows or by the exercise of reasonable care would

discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

The question then, is whether Angeles Park had a duty to protect its tenants from a dangerous condition immediately adjacent to its land under the facts of this case. As a landlord, Angeles Park had a duty "to maintain the common areas of the premises in a reasonably safe condition for the tenants' use." *Degel*, 129 Wn.2d at 49. (citing *Geise v. Lee*, 84 Wn.2d 866, 529 P.2d 1054 (1975)). RESTATEMENT (SECOND) OF TORTS § 343, however, imposes liability upon a landowner for harm caused "by a condition on the land." Angeles Park did not own or operate the irrigation canal. No case in Washington directly addresses this issue.

The majority of jurisdictions do not impose a duty upon landowners to protect people on their land from dangers on adjacent land. *See Corcoran v. City of San Mateo*, 122 Cal. App. 2d 355, 265 P.2d 102 (1953) (holding that landowners have no duty to erect a fence or barrier to prevent people from injuring themselves upon other people's property due to conditions, natural or artificial which may exist and over which one has no control). Accord *Cousins v. Yaeger*, 394 F. Supp. 595 (E.D. Pa. 1975) (defendant had no duty to build device on his land to protect local children from abutting railroad tracks); *Villani v. Wilmington Hous. Auth.*, 48 Del. 450, 106 A.2d 211 (1954) (finding no common-law duty requiring a landowner to enclose his land with fences); *Scott v. Future Invests. of Miami, Inc.*, 559 So. 2d 726 (Fla. Dist. Ct. App. 1990) (no duty by apartment owner/landlord to fence adjacent canal to protect children/tenant invitees); *Geiger v. Fisher*, 104 Ill.

App. 2d 6, 244 N.E. 2d 848 (1968) (holding a property owner had no duty to erect a fence to protect a lessee's child from an adjacent river).

Although a minority of jurisdictions holds otherwise, we find the majority view to be persuasive on this issue. Moreover, Washington has an established body of law governing the duty of abutting property owners in other similar contexts, which is helpful to our analysis:

> Generally, an abutting property owner must use and keep his premises in a condition so adjacent public ways are not rendered unsafe for ordinary travel. The duty, however, is imposed only when correction of the unsafe condition is within the owner's control . . . or responsibility . . . .

*Re v. Tenney*, 56 Wn. App. 394, 396-97, 783 P.2d 632 (1989) (citations omitted).

There is no claim or fact issue presented that Angeles Park used or failed to use its property in any way so as to render the adjacent property more unsafe or to increase any risk posed by the canal to its invitees. Furthermore, there is no inference which can be drawn from this record that Angeles Park was in any position to correct the hazardous condition of the canal or control it. We consider the principles of *Tenney* helpful in deciding Angeles Park had no legal duty to the McManns in the context of these facts.

The McManns contend that *Degel* supports their claim of liability against Angeles Park. We disagree. The facts of this case are distinguishable from *Degel*. Here, no additional charge is made for the children to reside on Angeles Park's premises compared to the special fee charged in *Degel*. *See Degel*, 129 Wn.2d at 46. The creek in *Degel* was only 10 feet below the level of the perimeter road around the mobile home park and just 20 feet from the road, compared to 100 to 150 yards from the closest edge of Angeles Park's mobile home development. *Id*. In *Degel*, the slope to the creek was described as steep compared to the gradual slope in this case, which leveled as it approached

the canal. *Id.* at 47. The landlord in *Degel* required families with children to live closest to the creek, but here there was no special placement of families with children nearest the canal. *Id.* at 46. In *Degel* the landlord developed a grassy area beyond the perimeter road nearest the creek as a play area for children. *Id.* Here, the area between the mobile home park and the canal was not developed or used as a play area, but was left largely in its natural state and for the most part was undeveloped. In *Degel*, the landlord had fenced other portions of the premises but had not placed a fence between the play area and the creek. *Id.* at 46-47. Here, there is no record of any fencing. The embankment in *Degel* was described as slippery, a condition not found in this case. *Id.* at 47.

Here, we are dealing with a canal, which is clearly on adjacent property beyond the control of Angeles Park, as compared to the natural body of water in *Degel* where it may be expected that a person might go to enjoy its natural characteristics. There are significant differences between the two cases, which distinguish them for the purposes of a summary judgment analysis. The facts here do not raise inferences that any material fact issues remain. Furthermore, reasonable minds could reach but one conclusion.

In summary, Angeles Park did not create any common area or maintain a condition on its land which can be questioned as not being reasonably safe for tenant use. There is no affirmative obligation on Angeles Park, as landlord, to this tenant, Devin McMann, as invitee, because there is no common area on its premises or other condition on its land which can be claimed to be unreasonably unsafe due to the proximity of the canal on adjacent property. *See Geise*, 84 Wn.2d 866.

In view of the circumstances of this case which differ significantly from those found in *Degel*, we believe the trial court correctly concluded Angeles Park did not owe a legally imposed duty to invitee, Devin McMann.

3. <u>Assumed Duty Issue</u>. The McManns contend that

Angeles Park voluntarily assumed a duty to advise its tenants when the canal would be full or empty by posting a notice announcing that the canal would be empty on October 15, 1992. The assumed duty doctrine requires one who undertakes a duty to warn to exercise reasonable care when doing so. *Brown v. MacPherson's, Inc.*, 86 Wn.2d 293, 300-01, 545 P.2d 13 (1975); *Sado v. Spokane*, 22 Wn. App. 298, 301, 588 P.2d 1231 (holding the voluntary assumption of a duty will give rise to liability if the performance is not done with reasonable care), *review denied*, 92 Wn.2d 1005 (1979).

Angeles Park presents the affidavits of its former Hills West managers, which specify that the notices they posted addressed only the irrigation cutoff from the well which serves Hills West. Hills West does not draw water from the adjacent canal. No copies of the notices were included in the record, and, from this record, it is impossible to find support for the McManns' assertion that Angeles Park assumed a legal duty to warn its tenants about the water level in the canal.

The McManns cannot create an issue of fact by making nonspecific conclusionary allegations of a speculative or argumentative nature in response to Angeles Park's specific statement of fact that a well, not the canal, served irrigation needs of the mobile home park. *Trane Co. v. Brown-Johnston, Inc.*, 48 Wn. App 511, 513-14, 739 P.2d 737 (1987). Assuming for argument that another notice may have been posted, there is no evidence showing who may have prepared or posted it. This does not create an issue of material fact. Barring speculation and conjecture, reasonable minds could reach only one conclusion about the fact question posed by the McManns. The notice related only to when irrigation water from the Hills West well would no longer be available, as no irrigation water is drawn from the canal. Therefore, the notice in this context could not raise a question of material fact. The trial court correctly granted summary judgment on the issue of assumed duty to warn.

## CONCLUSION

The trial court correctly held under the majority rule that there is no duty imposed upon a possessor of land to invitees for conditions not on the land, nor a duty to fence against conditions on adjacent land possessed by another. Additionally, the facts of *Degel* are distinguishable from the facts of this case and do not support the McManns' contentions because the *Degel* focus is on conditions and circumstances arising on or from the use of land possessed by Majestic. Here, the conditions and circumstances on Angeles Park's land do not raise inferences leading to material fact issues, and the focus is on the canal located on adjacent property. Finally, the McManns fail to raise any issue of material fact under the assumed duty doctrine.

We affirm.

SWEENEY, C.J., and THOMPSON, J. Pro Tem., concur.

Review denied at 135 Wn.2d 1005 (1998).