IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| BRANDON BETHAY, individually, | ) | |
| KYRA STONE, individually, and THE | ) | No.  35541-1-III |
| ESTATE OF CHRISTINE BETHAY, by | ) | |
| and through its Personal Representative, | ) | |
| Lorraine Bethay, | ) | |
| | ) | |
| Appellants, | ) | UNPUBLISHED OPINION |
| | ) | |
| v. | ) | |
| | ) | |
| SHAWN PARKER and JANE DOE | ) | |
| PARKER, and the marital community | ) | |
| thereof, and KBSM LLC, a Hawaii limited | ) | |
| liability company doing business in | ) | |
| Washington, | ) | |
| | ) | |
| Respondents. | ) | |

KORSMO, J. — The estate of Christine Bethay (Estate) appeals from the dismissal

at summary judgment of its action against the owners of property who allowed a youth

group to camp on its land.  We affirm the trial court's decision that a landowner has no

duty to warn licensees of dangers existing on nearby property.

FACTS

This case arises from the tragic drowning death of eight-year-old Christine Bethay. She was part of a youth group that was camping on land owned by defendants Shawn Parker and KBSM, LLC (Parker). Mr. Parker had permitted the group to camp, free of charge, on his land near Lake Cle Elum for several years. The height of the lake is controlled by a dam operated by the United States Bureau of Reclamation.

A group of youths was hosted on the property in late July 2015. On July 27, four counselors took 15 of the children swimming at nearby Morgan Creek Cove on the lake. The group walked from its campsite on the Parker property across a strip of land belonging to the United States Government, and then down into the cove. While attending to another child, the counselors lost track of Christine, a non-swimmer who was in the water without flotation devices. Her body was recovered from the cove the following day by the sheriff's search and rescue team.

The Estate filed suit against Parker, alleging that the property owners had an obligation to warn Christine about dangerous conditions in the cove. Concluding that the owners had no obligation to warn about conditions on property they did not own, the trial court granted summary judgment in favor of Parker. The court also opined, but did not rule, that absence of signage was not a proximate cause of the child's death.

The Estate timely appealed to this court. A panel heard oral argument.

No. 35541-1-III
*Bethay, et al v. Parker, et al.*

ANALYSIS

The sole issue we address is whether the trial court correctly concluded that the property owners did not owe a duty to warn about dangerous conditions on nearby property.[1]  We affirm.

The standards governing review of summary judgment rulings are well settled.  A reviewing court hears the matter de novo, considering the same evidence presented to the trial court.  *Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000).  Summary judgment is appropriate when the pleadings, affidavits, depositions, and admissions on file demonstrate there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *Berger v. Sonneland*, 144 Wn.2d 91, 102, 26 P.3d 257 (2001).  The moving party bears the burden of demonstrating there is no genuine dispute as to any material fact.  *Id*.  All facts and reasonable inferences are considered in a light most favorable to the nonmoving party.  *Id.* at 102-103.  All questions of law are reviewed de novo.  *Id.* at 103.

To establish negligence, "a plaintiff must show that (a) the defendant owed a duty of care to the plaintiff, (b) the defendant breached that duty, (c) injury to the plaintiff resulted, and (d) the defendant's breach was the proximate cause of the injury."  *Seiber v. Poulsbo Marine Ctr., Inc.*, 136 Wn. App. 731, 738, 150 P.3d 633 (2007).  In premises

---

[1] In light of this disposition, and the fact that the trial court did not rule on the topic, we do not consider the Estate's proximate cause argument.

3

liability cases, the scope of the legal duty owed to a person entering the premises depends on whether that person falls under the common law category of a trespasser, licensee, or invitee. *Degel v. Majestic Mobile Manor, Inc.*, 129 Wn.2d 43, 49, 914 P.2d 728 (1996). Under the undisputed facts, Christine Bethay was a "licensee" at the time of her death.

"A licensee is defined as 'a person who is privileged to enter or remain on land only by virtue of the possessor's consent.'" *Younce v. Ferguson*, 106 Wn.2d 658, 667, 724 P.2d 991 (1986) (quoting RESTATEMENT (SECOND) OF TORTS § 330 (AM. LAW INST. 1965)). With respect to the condition of the land, "a landowner owes trespassers and licensees only the duty to refrain from willfully or wantonly injuring them." *Degel*, 129 Wn.2d at 49. For licensees, a landowner need not inspect his property for hidden dangers, but need only make safe or warn licensees of dangers on his property that the owner knows or has reason to know of, and of which licensees are not reasonably likely to discover. *Memel v. Reimer*, 85 Wn.2d 685, 689, 538 P.2d 517 (1975). In addition, an owner of property must maintain his property so that an abutting public way is safe for ordinary travel. *Re v. Tenney*, 56 Wn. App. 394, 396-397, 783 P.2d 632 (1989). However, this duty is imposed only when an unsafe condition is within the property owner's control or responsibility. *Id.* at 397.

The duties owed a business invitee are significantly different. "A possessor of land owes a duty of reasonable care to invitees with respect to dangerous conditions on the land." *Ford v. Red Lion Inns*, 67 Wn. App. 766, 770, 840 P.2d 198 (1992). Washington

has adopted the *Restatement (Second) of Torts* § 343 as the test for determining landowner

liability to invitees. *Id.* That section of the *Restatement* provides:

> **Dangerous Conditions Known to or Discoverable by Possessor**
>
> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

We review the summary judgment ruling with these factors in mind.

The Estate argues that Parker owed Christine Bethay the same duties as an invitee,

even though she was only a licensee, and that this duty extends to warning her about the

dangers of neighboring property. The Estate contends that this result is compelled by

prior cases, principally *Degel*. It is not.

In *Degel*, the landowner owned a mobile home park adjacent to a fast-flowing

creek. 129 Wn.2d at 46. A grassy children's play area and a steep embankment[2] led from

the victim's home down to the creek. *Id.* at 46-47. A tenant's two-year-old child learning

to ride a bicycle with training wheels plunged down the embankment and into the creek,

resulting in grievous, permanent injuries. *Id.* at 47. Although portions of the mobile

home park were fenced, no fence prevented access to the creek from the play area. *Id.*

---

[2] The creek was 20 feet away from, but 10 feet below, a perimeter road. 129 Wn.2d at 46. This suggests the incline was at least a 50 percent grade.

The trial court dismissed a premises liability action against the landowner on the basis that the owner had no duty "to protect tenants from the inherent dangers of natural bodies of water." *Id*. The Washington Supreme Court reversed, stating:

> Where the landowner invites a child on the property for business purposes, the landowner has a duty to take *reasonable* precautions to make the property safe.

*Id*. at 54. The court then concluded that jury questions existed whether the harm should have been anticipated and whether reasonable care had been taken to protect against the harm. *Id*.

For a number of reasons, this case is not *Degel*. First, unlike *Degel*, Christine Bethay was a licensee, not a business invitee. Second, unlike the steep slope at issue in *Degel*, the cove at issue here was not property owned by the defendant landowner. Third, the immediate events leading to the child's injury began on the defendant's property. Fourth, Parker had no control over the water level at the lake or in the cove and, thus, had no method of making the property safer. The Bureau of Reclamation controlled the water levels.

Although any one of these differences likely is fatal to the Estate's case, the second distinction is dispositive. The Estate has presented no authority suggesting that landowner liability extends to create a duty to protect guests (whether business invitee or licensee) from hazards, either known or unknown, on someone else's property. Premises liability exists due to the owner's superior knowledge about dangerous conditions of the

6

land and ability to use that knowledge to protect others. *See* RESTATEMENT (THIRD) OF

TORTS: LIABILITY FOR PHYSICAL & EMOTIONAL HARM § 49 reporter's note cmt. c (AM.

LAW INST. 2012) (quoting *Rhodes v. Wright*, 805 N.E.2d 382, 385-386 (Ind. 2004)).

Even in circumstances where the property owner has knowledge of dangerous conditions

on nearby property, that owner has no ability to take corrective action and, thus, no duty

under the approach of the *Restatement*. There simply is no basis for imposing on Parker

a duty to warn his guests about dangers existing on nearby properties.[3]

*Degel* did not impose liability on the landowner due to the existence of the

dangerous creek at the end of the mobile home park's property.[4] Because the trial court

had acted on the basis of the "inherent dangers" of a body of water, the Supreme Court

addressed that issue to explain why it was *not* part of a premises liability analysis. 129

Wn.2d at 50-53. The court noted that the natural bodies of water doctrine was a defense

in attractive nuisance cases, but was not a defense where the injured party was a business

invitee. *Id*. at 51. Instead, the court applied the familiar *Restatement* standards described

previously. *Id*. at 49-50, 52-54.

Additionally, the factual focus of the court's analysis was on the condition of the

slope, not that of the creek. *Id*. at 47 (embankment was wooded, covered with "grass,

---

[3] The Estate likewise does not suggest how close the danger must be to the owner's property to trigger the duty to warn.

[4] The *Degel* opinion does not indicate whether or not the creek was part of the landowner's property.

7

leaves and tree branches" and was "extremely slippery"). The slope or embankment was on the mobile home park's property. The creek at the bottom of the slope merely was a further danger to children resulting from the conditions of the embankment.

*Degel* is not very much on point here; closer is a previous decision of this court, *McMann v. Benton County*, 88 Wn. App. 737, 946 P.2d 1183 (1997). There, a five-year-old drowned in an irrigation canal adjacent to a mobile home park's property. *Id*. at 739. A gradual slope, which leveled near the canal, led from the mobile home park 100 to 150 yards down to the canal, which was supposed to be emptied prior to the drowning. *Id*. Although the undeveloped land on the slope was owned by the same people who owned the mobile home park, it was not part of that property. *Id*.

This court distinguished *Degel* and determined that there was no duty, under the facts of that case, to warn about conditions on neighboring land. *Id*. at 739, 742-743, 746. This court noted that the majority of jurisdictions did not impose a duty on landowners to protect against dangers on adjoining land. *Id*. at 742-743. The court distinguished *Degel* on the basis that there was no evidence that the landowner's use of his own property had increased the risk of the danger posed by the canal. *Id*. at 743-744. This court also noted that the *Degel* mobile home park had placed a play area for the children right at the beginning of the steep slope to the creek and had not taken care of the slope property. *Id*. at 744. In contrast, there were no common facilities for the mobile home park leading to the irrigation canal.

Unlike *Degel*, the condition of Parker's property did not contribute to the drowning of Christine Bethay. Like *McMann*, we find no basis for extending the duty to protect an invitee from known dangers on the owner's property to also protect from dangers on the nearby property of others.[5] There also is no basis for extending the same duty owed to an invitee to one who is merely a licensee and thereby abolish the distinction between the two classes of permissive users of property.

The judgment is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____          _____
Fearing, J.                                              Pennell, A.C.J.

---

[5] We reached a similar result in *State v. Stockdale*, 166 Wn. App. 557, 271 P.3d 917 (2012). There, the plaintiff had left a commercial swimming area to dive from a nearby cliff on adjoining property belonging to another. Injured in the dive, she sued the commercial swimming company for failing to warn about the danger of cliff diving. This court reaffirmed *McMann* and baldly stated: "a property owner does not have a duty to protect visitors from dangers on adjacent lands." *Id.* at 568. We rejected the plaintiff's failure to warn argument. *Id.* at 568-570.